

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WK:DIB
F.#2023R00465

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 3, 2024

<u>By Hand, ECF and Email</u>

The Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Shachar Bivas
     <u>Criminal Docket No. 23-319 (DLI)</u>

Dear Judge Irizarry:

  The government respectfully submits this sentencing memorandum in advance of the defendant Shachar Bivas's upcoming sentencing in the above-captioned case. For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range.

I. <u>Background</u>

  A. <u>Procedural History</u>

  On August 4, 2023, a Grand Jury sitting in the Eastern District of New York returned an indictment (the "Indictment") charging the defendant with two counts in connection with the below described conduct: Interference with a Flight Attendant (Count One), in violation of Title 49, United States Code, Section 45604, and Assault in the Special Maritime and Territorial Jurisdiction of the United States (Count Two), in violation of 18 U.S.C. § 113(a)(4). On December 19, 2023, pursuant to a plea agreement with the government, the defendant pled guilty before Your Honor to Count One of the Indictment. <u>Id.</u> ¶ 1.

  B. <u>Offense Conduct</u>

  The defendant's conduct is set forth in the United States Probation Department's Presentence Investigation Report, dated March 19, 2024 ("PSR"), and is summarized below for the convenience of the Court.

  On May 31, 2023, at approximately 11:55 p.m. Israel Daylight time ("IDT"), Delta flight 235 (the "Flight") departed Ben Gurion Airport in Tel Aviv, Israel for John F.

Kennedy International Airport ("JFK") in Queens, New York.  PSR ¶ 3.  The Flight landed at JFK on June 1, 2023 at approximately 4:45 a.m. Eastern Standard Time ("EST").  Id.

Shortly after takeoff, the defendant, a passenger aboard the Flight, approached a flight attendant (hereinafter, "Flight Attendant-1") and requested an alcoholic drink.  Flight Attendant-1 then provided the defendant with a vodka drink and subsequently returned to his flight attendant duties.  Id. ¶ 4.  Later in the Flight, Flight Attendant-1 informed, among others, a different flight attendant (hereinafter, "Flight Attendant-2"), in sum, substance and part, that the defendant was intoxicated and should not be served alcohol.  Id.

Thereafter, the defendant approached Flight Attendant-2 in the back of the aircraft and requested an alcoholic drink.  After Flight Attendant-2 declined to provide the defendant with an alcoholic drink, the defendant, while slurring his words and appearing intoxicated, stated to Flight Attendant-2, in sum, substance and part, that his father had recently died and he was upset.  Id.  In response, Flight Attendant-2 offered the defendant a coffee and asked him to return to his seat.  Id.

A short time later, after the defendant had returned to his seat, the defendant again approached Flight Attendant-2 in the back of the aircraft and requested an alcoholic drink and place to smoke a cigarette.  Id. ¶ 5.  In response, Flight Attendant-2 stated that he would not serve the defendant any more alcohol and that he could not smoke on the aircraft.  Id.  At that time, the defendant became angry, punched a refrigerator next to Flight Attendant-2's head and then returned to his seat.  Id.  After this incident, Flight Attendant-2 reported the defendant's drunken behavior to other flight attendants, including the chief flight attendant.  Id.

Minutes later, while the aircraft was over Europe and Flight Attendant-2 was having a conversation with another passenger (hereinafter, "Passenger-1") in the back of the aircraft, the defendant assaulted Flight Attendant-2.  Id.  In particular, the defendant pushed Passenger-1 to the side and demanded an alcoholic drink from Flight Attendant-2.  Id.  The defendant then forcibly grabbed, pushed and punched Flight Attendant-2, causing bruising to Flight Attendant-2's left arm, as shown in Figure 1 below.  Id.  During the assault, the defendant also ripped Flight Attendant-2's uniform, as shown in Figure 1 below.



**Figure 1**

Moments later, after hearing Flight Attendant-2 screaming for help, a different flight attendant (hereinafter, "Flight Attendant-3") arrived at the scene. Id. After observing the defendant assaulting Flight Attendant-2, Flight Attendant-3 physically restrained the defendant and removed him from Flight Attendant-2. Id.

After the assault, Flight Attendant-2 ran to the front of the aircraft and asked the captains to land the aircraft. Id. While the captains declined his request, they reported the assault to law enforcement located at JFK and invoked certain emergency aircraft procedures which, as described in a letter addressed to Your Honor from one of the aircraft's captains (attached hereto as Exhibit A), diminished the captains' abilities to attend to important operational matters and risked the aircraft's safety for the rest of the Flight. In addition, out of fear of being attacked by the defendant, Flight Attendant-2 did not return to the back of the aircraft for the rest of the Flight despite being assigned to work there. Id.

As for the defendant, after the assault and being restrained by Flight Attendant-3, he remained in the back of the aircraft accompanied by multiple flight attendants. Id. ¶¶ 5-6. The defendant admitted to these flight attendants that he grabbed and pushed Flight Attendant-2 and asked them to apologize to Flight Attendant-2 on his behalf. Id.

In addition, sometime after the assault, the defendant entered a bathroom in the back of the aircraft. Id. ¶ 6. Upon exiting the bathroom, a flight attendant (hereinafter, "Flight Attendant-4") observed blood on the defendant's pants and that the bathroom's mirror had been broken, leading Flight Attendant-4 to conclude that the defendant punched and broke the mirror, resulting in the blood on his pants. Id.

C. Defendant's Criminal History

This is not the defendant's only crime involving alcohol. In particular, in 2005, the defendant was arrested and later convicted in connection with driving a car at a high rate of speed (110 miles per hour in a 55 mile per hour zone) while under the influence of alcohol. Id. ¶ 23. The defendant was fined and his license was suspended as a result. Id. Moreover, in 2015, the defendant was arrested and later convicted in connection with driving a car into incoming traffic while under the influence of alcohol. Id. ¶ 24. As a result, the defendant was sentenced to 10 days' custody and three years' probation, and was ordered to attend alcohol treatment. Id.

D. Defendant's Post-Release Violations

On February 20, 2024, the defendant tested positive for marijuana, which the defendant admitted to consuming days earlier. Id. ¶ 45; United States Pretrial Services Agency Report, dated February 21, 2024.

II. Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable [the Guidelines] range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point

and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citations omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citations and footnote omitted). 18 U.S.C. § 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. See 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The district court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

### III. Guidelines Calculation

The government agrees with the United States Probation Department's ("Probation") calculation of the defendant's offense level in the PSR, as set forth below:

| | |
|---|---|
| Base Offense Level (U.S.S.G §§ 2A5.2(a)(3) and 2A2.3(a)) | 7 |
| Plus: Victim Sustained Bodily Injury (U.S.S.G. § 2A2.2(b)(1)(A)) | +2 |
| Less: Timely Acceptance of Responsibility (U.S.S.G. § 3E1.1(a)) | -2 |
| Total: | 7 |

PSR ¶¶ 13-21. This is the same offense level estimated in the plea agreement between the government and the defendant. In particular, the total adjusted offense level is 7, which, based on a Criminal History Category of I, carries an advisory Guidelines range of 0 to 6 months' incarceration. Id. ¶ 61.

### IV. A Sentence Within the Guidelines Range is Appropriate

The government respectfully requests that the Court impose a sentence within the Guidelines range, which would be sufficient, but not greater than necessary, to achieve the goals of sentencing. See 18 U.S.C. § 3553(a).

In particular, here, such a sentence appropriately reflects the serious nature of the offense. The defendant was belligerently drunk on an international flight and harassed and assaulted Flight Attendant-2 after he repeatedly (and appropriately) declined to provide the defendant with additional alcoholic drinks. As described above, the defendant injured Flight Attendant-2 and prevented him from performing his flight attendant duties, such as ensuring the safety of the 275 plus passengers traveling together in an enclosed space, from which there was no escape, more than 30,000 feet above the earth. Additionally, the defendant's assault caused the aircraft's captains to invoke certain emergency aircraft procedures that diminished the captains' abilities to attend to important operational matters and risked the aircraft's safety for the rest of the Flight.

The defendant's prior criminal history and his continued abuse of alcohol, including in connection with the instant offense, is also deeply concerning and warrants a sentence within the Guidelines range to achieve specific deterrence. As described above, the defendant was twice arrested and convicted in connection with separate dangerous incidents of driving a car while under the influence of alcohol. Just as the defendant's drinking risked the lives of fellow motorists there, his drinking here risked the safety of those aboard the Flight and potentially countless others on the ground.

Finally, the government submits that the imposition of a sentence within the Guidelines range will deter others from engaging in dangerous conduct that endangers the safety of commercial aircrafts, innocent passengers and others.

In sum, a sentence within the Guidelines range would adequately address the seriousness of the defendant's crime, promote respect for the law, deter the defendant from further criminal conduct, and deter others from committing crimes like those charged here.

V.      <u>Conclusion</u>

For all the foregoing reasons, the government respectfully requests that the Court impose a sentence within the Guidelines range.

                    Respectfully submitted,

                    BREON PEACE
                    United States Attorney

By:    <u>/s/ David I. Berman</u>
         David I. Berman
         Assistant U.S. Attorney
         (718) 254-6167

cc:    Clerk of Court (DLI) (by Hand, ECF and Email)
       Nipun Marwaha, Esq. (Defense Counsel) (by ECF and Email)
       United States Probation Officer Alexandria Lohwasser (by Email)